# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| European Roasterie, Inc., a Minnesota corporation, | Civil No. 10-53 (DWF/JJG) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Brian Dale, an individual, and Peel, Inc., a Delaware corporation, | |
| Defendants. | |

LuAnn M. Petricka, Esq., Petricka Law Firm, PA; and William R. Skolnick, Esq., Skolnick & Shiff, PA, counsel for Plaintiff.

Michael J. Aschenbrener, Esq., and Rafey S. Balabanian, Esq., Edelson McGuire, LLC, counsel for Defendants.

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss Counts IV, V, and VI of Plaintiff's Complaint brought by Defendants Brian Dale ("Dale") and Peel, Inc. ("Peel") (collectively, "Defendants") and a Motion to Dismiss Peel's Counterclaim brought by Plaintiff European Roasterie, Inc. ("ERI"). In its Complaint, ERI alleges: (1) breach of contract (Counts I and III); (2) account stated (Count II); (3) fraud and misrepresentation (Count IV); (4) constructive trust (Count V); and (5) unjust enrichment (Count VI). In its Counterclaim, Peel alleges: (1) breach of contract (Count I); (2) defamation (Count II); and (3) intentional interference with prospective economic advantage (Count III). For the

reasons set forth below, Defendants' motion is granted in part and denied in part, and ERI's motion is granted.

## BACKGROUND

ERI alleges that Defendants owe $232,478.50 for specialty coffee products purchased pursuant to a contract it entered with Peel through Dale.[1] Peel does not deny that it received and has not paid ERI for the goods. Rather, Peel asserts that the goods were non-conforming. Peel also alleges that ERI is liable for defamatory statements made to Peel's business partners.

ERI extended credit to Peel after receiving a Credit Application and Guarantee dated May 24, 2006. (Compl. ¶¶ 7-9, Ex. A.) Defendants allege that between 2006 and 2009, Peel purchased more than $2.6 million worth of product from ERI. (Countercl. ¶ 10.)

Sometime during mid-to late 2009, ERI alleges that Peel stopped paying its invoices. (Compl. ¶ 14.) ERI asserts Peel subsequently made express promises to pay for received goods in exchange for additional product.[2] (*Id*. ¶¶ 15-16.) ERI alleges that Peel

---

[1]  ERI also alleges that Peel entered a separate agreement to order green coffee beans for future roasting orders from ERI beginning on June 22, 2009. (Compl. ¶ 12, Ex. C.) ERI further alleges that it special ordered over $110,000 worth of beans for Dale. (*Id*. ¶ 13.) ERI is still holding onto those beans.

[2]  Defendants admit that Dale made payment arrangements with ERI, but deny such arrangements were tied to the receipt of additional product. Dale had previously made good on his promises to make payment in exchange for additional product. (Compl. ¶ 15.)

(Footnote Continued on Next Page)

has not paid for more than $215,000 of product. (*Id.*) ERI specifically alleges that it delivered $73,000 of that product in October 2009, "in direct reliance on Dale's specific promises that he would pay no less than $100,000.00" toward the amount due from previous orders by October 15, 2009. (*Id.* ¶ 16.)

ERI alleges that on October 23, after Peel's promised check did not arrive, ERI contacted Dale who reassured ERI that the check was in the mail. (*Id.* ¶ 17.) ERI alleges that after the check still did not arrive, it demanded payment in full, at which point Peel stated for the first time that it was having financial difficulties. (*Id.*)

ERI then demanded that Peel make all unpaid-for existing product available for return to ERI.[3] (*Id.* ¶ 18.) ERI alleges that Dale stated he would make immediately available all existing product. (*Id.* ¶ 20.) ERI alleges that Dale reneged, and Peel sold the product. (*Id.*) ERI claims that Peel later offered to pay $25,000 to settle the outstanding invoices from ERI, which were then worth about $230,000. (*Id.* ¶ 21.) ERI declined Peel's offer and sent a written demand, requesting that the product be made available for return to ERI. (*Id.* ¶ 22.) Again, Peel continued to sell the product, but refused to pay the outstanding invoices. (*Id.* ¶ 23.)

Defendants have a different explanation for why their relationship with ERI went south. They allege that "[b]eginning in or about 2009, [ ] Plaintiff began to sell to Peel

---

(Footnote Continued From Previous Page)

[3]  Defendants admit that ERI demanded the product be made available. They assert,
(Footnote Continued on Next Page)

coffee products that did not satisfy Peel's requirements regarding grade and quality of the coffee products." (Countercl. ¶ 12.) As a result, Peel claims that it incurred more than $1,000,000 in costs and expenses. (*Id*. ¶ 13.) Peel also alleges that ERI made defamatory statements to Peel's prospective and current clients. (*Id.* ¶¶ 28-30.)

On January 6, 2010, ERI filed suit against Defendants. On February 23, 2010, Defendants brought their motion to dismiss Counts IV, V, and VI of the Complaint. That same day, Peel filed its counterclaims against ERI, notifying ERI that the goods were defective.[4] On March 22, 2010, ERI brought its motion to dismiss Peel's Counterclaim.

## DISCUSSION

### I. Legal Standard

In deciding a motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. School District of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in

---

(Footnote Continued From Previous Page)
however, that ERI was not entitled to the return of the products.
[4] Defendants admit that they never rejected any of the products nor informed ERI of
(Footnote Continued on Next Page)

deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[5]  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.  As the United States Supreme Court recently reiterated, "[t]he threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.  While recent United States Supreme Court decisions addressing the Rule 12(b)(6) standard might have raised the pleading bar in certain respects, there is no requirement that a plaintiff actually prove the merits of its case in its complaint.

## II.   Defendants' Motion to Dismiss

---

(Footnote Continued From Previous Page)
their alleged low quality until Peel filed its Counterclaim in this Court.
[5]   Defendants argue that the Court may not consider factors outside of the pleading's four corners.  ERI is correct that the Court may consider *all* pleadings of record since they are matters of public record.  Defendants also argue that ERI violated Fed. R. Civ. P. 12 by filing its answer to Peel's counterclaim the same day it filed its motion to dismiss the same.  The Court need not decide this issue because even assuming a violation of Rule
(Footnote Continued on Next Page)

## A. Fraud and Misrepresentation (Count IV)

Defendants move to dismiss Count IV of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Defendants assert that ERI has failed to adequately plead fraud or intentional misrepresentation because mere "broken promises" cannot amount to fraud.

Common law fraud encompasses intentional misrepresentation. *Iverson v. Johnson Gas Appliance Co.,* 172 F.3d 524, 529 (8th Cir. 1999); *Dvorak v. Maring,* 285 N.W.2d 675, 678 n.4 (Minn. 1979). To state a claim for fraud/intentional misrepresentation, ERI must allege that (1) Defendants made a false representation about a past or present material fact that was susceptible of knowledge; (2) Defendants knew the representation was false or asserted it as their own knowledge without knowing whether it was true or false; (3) Defendants intended to induce ERI to act, and ERI was induced to act; and (4) ERI acted in reliance on the representation and was damaged. *M.H. v. Caritas Family Servs.,* 488 N.W.2d 282, 289 (Minn. 1992); *see also Iverson,* 172 F.3d at 529 ("Under Minnesota law, fraud is properly pled if the complaint alleges the elements of intent, inducement, reliance, and damages."). Moreover, Rule 9(b) provides that "[i]n all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). To be sufficiently particular, ERI must provide the "time, place and contents of false representations, as well as the identity of the person making the misrepresentation." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539,

---

(Footnote Continued From Previous Page)
12, the Court's decision is the same with or without consideration of the answer.

549 (8th Cir. 1997). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995). Broken promises generally do not constitute fraud, *International Travel Arrangers v. Northwest Airlines, Inc.*, 991 F.2d 1389, 1402 (8th Cir. 1993) (applying Minnesota law), unless the plaintiff shows "affirmative evidence" that the promisor had no intention to perform. *Hayes v. Northwood Panelboard Co.*, 415 N.W.2d 687, 690 (Minn. Ct. App. 1987).

ERI alleges that Peel, through Dale, made "specific representations and promises of payment on outstanding amounts, and concurrently ask[ed] to order additional product on credit at a time when Defendants had no intentions of making payment as promised" and "[k]nowingly plac[ed] orders for merchandise during a time period in which Defendants were either unable or unwilling to pay for merchandise." (Compl. ¶ 45.) ERI also alleges that Defendants purposefully hid their insolvency. (*Id.*) ERI specifically alleges that $73,000 of product was delivered on October 19, 2009, "in direct reliance on Dale's specific promises that he would pay no less than $100,000.00" toward the amount due from July and September orders by October 15. (*Id.*) ERI further alleges that Defendants "[s]tall[ed] Plaintiff from taking action by promising to return unused product sitting at Peels' business locations, when in reality Defendants continued to sell the same to its retail customers and retain all proceeds." (*Id.*)

Therefore, assuming all facts in the Complaint to be true and construing all reasonable inferences from those facts in the light most favorable to ERI, the Court finds

that the Complaint contains sufficient allegations to meet the Rule 9(b) pleading requirements. Thus, the Court denies Defendants' motion to dismiss Count IV.

B.  **Constructive Trust and Unjust Enrichment (Counts V and VI)**

ERI alleges constructive trust and unjust enrichment because Defendants gained financially by failing to pay for product ordered and received from ERI. ERI therefore alleges that it is entitled to the establishment of a constructive trust against Defendants' money and personal assets to secure the money wrongfully obtained. ERI argues that a constructive trust is "especially necessary when Defendant Dale has other business[es], [with] which he upon information and belief has commingled monies and assets."

Unjust enrichment ultimately requires ERI to prove that Defendants received something of value, which they were not entitled to, under circumstances that would make it unjust to permit its retention. *See Southtown Plumbing, Inc. v. Har-Ned Lumber Co. Inc.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992). ERI must show that Defendants were "unjustly enriched in the sense that the term unjustly could mean illegally or unlawfully." *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981) (internal quotations omitted). "A constructive trust is an equitable remedy imposed to prevent unjust enrichment and is completely dissimilar to an express or resulting trust." *Freundschuh v. Freundschuh*, 559 N.W.2d 706, 711 (Minn. Ct. App. 1997). Defendants move to dismiss Counts V and VI of the Complaint because ERI's breach of contract claims bar assertion of equitable causes of action.

Under Minnesota law unjust enrichment and constructive trusts are equitable

remedies that plaintiffs may not pursue unless there is no adequate remedy at law. *See Southtown Plumbing, Inc.*, 49 N.W.2d at 140. ERI is correct that a plaintiff is allowed, generally at the motion to dismiss stage, to plead alternative theories of recovery under Federal Rule of Civil Procedure 8, especially if it is not clear if the parties disagree whether a valid contract governs their particular dispute. *See, e.g., Pinnacle Pizza Co. v. Little Caesar Enters., Inc.*, 395 F. Supp. 2d 891, 903 (D.S.D. 2005) (denying defendant's motion for judgment on the pleadings and allowing unjust enrichment claim to proceed because the dispute may not have been governed by the parties' contract).

Here, the parties agree that their dispute is governed by their contract. Therefore, the Court grants Defendants' motion to dismiss the unjust enrichment and constructive trust claims.

### III. Plaintiff's Motion to Dismiss Counterclaims

#### A. Breach of Contract (Count I)

ERI argues that Peel's breach of contract counterclaim lacks sufficient specificity to state a claim. ERI also argues that Peel's breach of contract claim is barred because Peel failed to timely or properly reject the specialty coffee products it received on credit from ERI.[6]

To succeed on its breach of contract claim, Peel must ultimately prove four

---

[6] ERI specifically argues that Peel cannot retain, sell, and profit from the sale of the goods and later claim that it did not accept the goods. Though compelling, the Court declines to decide this issue because it grants ERI's motion to dismiss for failure to plead

(Footnote Continued on Next Page)

elements: (1) a valid contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages. *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 961 (Minn. 2000) (citing *Briggs Transp. Co. v. Ranzenberger*, 217 N.W.2d 198, 200 (Minn. 1974)).

Viewing the facts in the light most favorable to Peel, the Court finds that Peel's claim should be dismissed for failure to state a claim because it lacks sufficient specificity. Peel requests damages exceeding $1,000,000 because "[b]eginning in or about 2009, [ ], Plaintiff began to sell to Peel coffee products that did not satisfy Peel's requirements regarding grade and quality of the coffee products." (Countercl. ¶¶ 12, 24.) Peel's mere conclusory allegations fail to state any facts regarding the alleged breach such as how the goods were non-conforming, which particular goods were non-conforming, when they were delivered, and when Peel learned that the goods were non-conforming. Peel's claim not only lacks sufficient specificity "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, but its general nature and timing[7] cause the Court to suspect that Peel's counterclaim may be retaliatory.

Accordingly, the Court grants ERI's Motion to Dismiss Peel's breach of contract claim.

### B. Defamation (Count II)

---

(Footnote Continued From Previous Page)
with sufficient specificity.

[7] Peel acknowledges that it did not notify ERI of the allegedly low quality of the
(Footnote Continued on Next Page)

To survive a motion to dismiss on its defamation claim, Peel must plead: (1) a false and defamatory statement; (2) publication of that statement to a third party; and (3) harm to Peel's reputation. *Weinberger v. Maplewood Review*, 668 N.W.2d 667, 673 (Minn. 2003). ERI argues that Peel's pleading fails to identify what the allegedly defamatory statements were, who made them, and to whom, when, and where they were made.

Peel argues that it sufficiently pled the elements of defamation by alleging that "[o]n information and belief, during the months of August through October 2009, Plaintiff stated to several clients of Peel that Peel and its owner Brian Dale, have engaged in fraud, that Peel never pays its debts, and that such clients should terminate their business relationship with Peel." (Countercl. ¶ 28.)

Because Peel fails to identify the speaker, the statements, the context and time in which they were made, and to whom they were made, the Court grants ERI's motion to dismiss Count II of Peel's Counterclaim.

C. **Intentional Interference with Prospective Economic Advantage (Count III)**

Peel bases its interference claims on the alleged defamation by ERI. (Countercl. ¶¶ 34-37.) In particular, Peel asserts that ERI interfered with its business relationships (both existing and prospective) by making the defamatory statements that also form the

---

(Footnote Continued From Previous Page)
goods until the filing of its counterclaim in this Court.

basis of its defamation claim. (*Id.*) Tortious interference claims that are duplicative of a claim for defamation are properly dismissed. *See Wild v. Rarig*, 234 N.W.2d 775, 793 (Minn. 1975) (holding that the statute of limitations applicable to a defamation claim also applied to an interference claim that was essentially part of the defamation claim); *Pham v. Le*, No. C7-04-9220, 2007 WL 2363853, at *8 (Minn. Ct. App. Aug. 21, 2007) (holding that a tortious interference claim that is duplicative of an unsuccessful defamation claim fails as a matter of law). As the Court explained above, Peel's defamation claim fails. Accordingly, Peel's interference claim fails as well.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that**:**

1. Defendants' Motion to Dismiss Counts IV, V, and VI of the Complaint (Doc. No. [9]) is **GRANTED IN PART AND DENIED IN PART** as follows:

    a. Defendants' Motion to Dismiss Plaintiff's claim for fraud/misrepresentation (Count IV) is **DENIED**.

    b. Defendants' Motion to Dismiss Plaintiff's claim for unjust enrichment (Count V) is **GRANTED**.

    c. Defendants' Motion to Dismiss Plaintiff's claim for imposition of a constructive trust (Count VI) is **GRANTED**.

2. Plaintiff's Motion to Dismiss Defendant Peel's Counterclaim (Doc. No. [24]) is **GRANTED** as follows:

    a. Plaintiff's Motion to Dismiss Defendant Peel's counterclaim

for breach of contract (Count I) is **GRANTED**.

      b.      Plaintiff's Motion to Dismiss Defendant Peel's counterclaim for defamation (Count II) is **GRANTED**.

      c.      Plaintiff's Motion to Dismiss Defendant Peel's counterclaim for intentional interference with prospective economic advantage (Count III) is **GRANTED**.

Dated: May 4, 2010         <u>s/Donovan W. Frank</u>
                                  DONOVAN W. FRANK
                                  United States District Judge